***NOT FOR PUBLICATION***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| JULIE AYMONIER, | : | **Civil No. 09-4757 (FLW)** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
| v. | : |  |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Defendant. | : |  |

---

**WOLFSON, United States District Judge:**

Presently before the Court is Defendant United States of America's ("United States'") motion for summary judgment on Plaintiff Julie Aymonier ("Aymonier's") tort claim.  Aymonier brought suit against the United States seeking to recover for injuries sustained on land owned by the United States.  Because I conclude that the United States is immune from suit under New Jersey's Landowner Liability Act, N.J.S.A. 2A:42-2, et seq. ("LLA" or "the Act"), the United States' motion is granted.

I.      BACKGROUND

The following facts are undisputed.[1]  On Thanksgiving Day, 2008, 83-year-old Julie Aymonyier went for a walk in Sandy Hook, New Jersey, along with her family.

---

[1]      Plaintiff indicates in her opposition brief that she does not dispute any of Defendant's Statement of Material Facts.  See Pl. Opp. at 1.  Hence the Court's recount

Sandy Hook is a barrier breach peninsula located in the Gateway National Recreation Area ("Gateway").  Gateway, public lands dedicated for recreational use that are owned by the United States and administered by the National Park Service, extends from Monmouth County, New Jersey, to Staten Island, New York, Queens, New York, and Brooklyn, New York.

The Sandy Hook area of Gateway consists of 2,070 acres of land and 2,620 acres of waters.  A portion of Sandy Hook is administered by the United States Coast Guard ("Coast Guard") and is inaccessible to the public.  That portion, known as Station Sandy Hook, is comprised of multiple residence and buildings.  In another portion of Sandy Hook, the decommissioned military base Fort Hancock remains.  On that base, there are over 100 buildings, including historic gun batteries, uninhabited homes, a chapel, and a movie house. Out of the 131 buildings in Fort Hancock, there are 9 homes with permanent residents.  Aside from Station Sandy Hook and Fort Hancock, there are no other structures on Sandy Hook; its topography is limited to beaches, salt marshes, dunes, a maritime forest, and a habitat for migratory birds.  It is open to the public and no fee is charged to walk-on visitors.

While walking on Fisherman's Trail at Sandy Hook that Thanksgiving, Aymonier tripped over a small piece of metal protruding from the ground.  Fisherman's

---

of the facts relies upon said statement.  In addition, the Court relies upon those facts in Plaintiff's Counterstatement of Material Facts that are uncontested by Defendant.

Trail is a dirt and sand trail that begins at a parking lot and leads to the shore. [2]  It is near the old gun batteries of Fort Hancock, and near an old observation deck from which the New York skyline can be viewed.   It is a "relatively remote area consisting primarily of brushes and shrubs."  Defendant's Statement of Material Facts, ¶ 45.

Just after Aymonier's fall, Park Ranger Kevin Hauser was called to the scene. According to his testimony, the small piece of metal, upon which Aymonier tripped, was a remnant of a fence that had been removed years earlier by the National Park Service.  Aymonier sustained a fractured wrist as a result of the fall.

Aymonier brought suit in this Court on September 16, 2009, seeking to hold the United States' liable via the Federal Torts Claim Act, 28 U.S.C. § 1346.  The United States now moves for summary judgment on Aymonier's claim, arguing that it is immune from suit under the LLA.   For the following reasons, the United States' motion is granted.

## II.    STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party

---

[2]     The Court is aware of Plaintiff's statement in her Counterstatement of Material Facts, ¶ 5, that Fisherman's Trail is "paved."   However, Plaintiff agreed with all of Defendant's Statement of Material Fact, including ¶ 27, which states that Sandy Hook is a "dirt and sand trail."   In its reply, the United States further challenges the Plaintiff's characterization of the trail.   Whether or not the trial is paved has no bearing on my analysis of the LLA.   As explained in more detail herein, my analysis turns on the character of Sandy Hook generally.

is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n. 1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Monroe v. Beard, 536 F.3d 198, 206-07 (3d Cir. 2008). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to material facts." Id. at 206 (quoting Matsushita, 475 U.S. at 586).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249. Nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.  S.E.C. v. Antar, 44 Fed.Appx. 548, 554 (3d Cir. 2002).

## III.    DISCUSSION

Absent congressional consent, the sovereign immunity of the United States insulates it from suit.  United States v. Lee, 106 U.S. 196, 205 (1882).  Aymonier's claim against the United States is "brought pursuant to one such expression of congressional consent, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2003)."  Nazzaro v.

United States, 304 F.Supp.2d 605, 616 (D.N.J. 2004).  Under the FTCA, plaintiffs may sue

the United States for damages:

> for injury or loss of property, or personal injury or death
> caused by the negligent or wrongful act or omission of any
> employee of the Government while acting within the scope
> of his office or employment, under circumstances where the
> United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the
> act or omission occurred.

28 U.S.C. §§ 1346(b).  The FTCA itself does not create a substantive cause of action but

"confers a procedural remedy by which substantive state law can be applied against the

federal government."  Nazzaro, 304 F.Supp.2d at 619 (quoting Weber v. United States,

991 F.Supp. 694, 696 (D.N.J. 1998)) (alterations omitted).  Because Aymonier's injury

occurred in New Jersey, the law of that state controls.

As noted, Defendant argues that it is immune from suit under New Jersey's

Landowner Liability Act.  The LLA, which was enacted in 1962, alters the common law

of premises liability law such that

> a. *An owner, lessee or occupant of premises* ... whether or not
> improved or maintained in a natural condition, or used as
> part of a commercial enterprise, *owes no duty to keep the
> premises safe for entry or use by others for sport or recreational
> activities*, or to give any warning of any hazardous condition
> of the land or in connection with the use of any structure or
> by reason of any activity on such premises to persons
> entering for such purposes;
>
> b. An owner, lessee or occupant of premises who gives
> permission to another to enter upon such premises for a
> sport or recreational activity or purpose does not thereby (1)

> extend any assurance that the premises are safe for such
> purpose, or (2) constitute the person to whom permission is
> granted an invitee to whom a duty of care is owed, or (3)
> assume responsibility for or incur liability for any injury to
> person or property caused by any act of persons to whom
> the permission is granted.

N.J.S.A. 2A:42A-3 (emphasis added); Weber, 991 F.Supp. at 698. The Act, however,

does not provide immunity "[f]or willful or malicious failure to guard, or to warn

against, a dangerous condition, use, structure or activity ...." N.J.S.A. 2A:42A-2a. In

short, the LLA provides immunity for landowners that grant others free access to their

premises for recreational purposes.

Notably, the text of the LLA does not define the "premises" to which it applies.

Toogood v. St. Andrews, 313 N.J.Super. 418, 422 (App. Div. 1998). However, courts

interpreting the Act have held that it does not apply to land located "in residential and

populated neighborhoods," Harrison v. Middlesex Water Co., 80 N .J. 391, 397 (1979),

but was intended to provide immunity for "undeveloped, open and expansive rural

and semi-rural properties." Id. at 400; see also Labree v. Millville Mfg., Inc., 195

N.J.Super. 575, 581 (App. Div. 1984) (reiterating the principles set forth in Harrison).

The statute was amended in 1991 to clarify that the Act applies to such rural or semi-

rural land "whether or not improved or maintained in a natural condition." Toogood,

313 N.J.Super. at 423; see also Vaxter v. Liberty State Park, Docket No. L-5623-08, 2010

WL 4237242, *2 (D.N.J., Oct. 23, 2010).[3]  And, according to the Act's text, "[it] shall be liberally construed to serve as an inducement to the owners, lessees and occupants of property, that might otherwise be reluctant to do so for fear of liability, to permit persons to come onto their property for sport and recreational activities." Toogood, 313 N.J.Super. at 425 (quoting N.J.S.A. 2A:42A-2).

Plaintiff does not dispute that she entered Sandy Hook for recreational purposes, and that she was charged no entrance fee.  She contends that the Act is inapplicable because Sandy Hook is not a "premises" covered by the Act.  Pointing to the fact that Sandy Hook is situated in Fort Hancock and Gateway, Plaintiff argues that the presence of the former military housing and preserved historical buildings in Fort Hancock, and that Gateway National Recreation Area extends to the New York City metropolis, compel the conclusion that Sandy Hook is not rural or semi-rural.  In Plaintiff's view, the dominant character of the land can be determined only by "placing that location in its larger context of the surrounding neighborhood and environment ..." Pl. Opp. at 12. She cites Weber, supra, among other cases, for this proposition.

Weber involved an accident at a playground located in a park on the campus of Fort Dix, New Jersey.  The park was located on a large open area of the Fort and was open to the public.  Weber, 991 F.Supp. at 695; Toogood, 313 N.J.Super. at 425

---

[3]     Under New Jersey Court Rule 1:36-3, unpublished decisions may not be cited as binding authority.  I cite unpublished New Jersey Appellate Division decisions in this opinion as persuasive, non-binding authority.

(discussing Weber).  Holding that the park was a protected premises under the Act, the court reasoned concisely:  "[the] Park is a 'premises' under the LLA since 'premises' . . . includes land 'whether or not improved or maintained in a natural condition." Weber, 991 F.Supp. at 700.

In an attempt to illustrate that the area surrounding the accident site must be considered, Plaintiff argues that Weber would have reached a different result had the playground been in a city park, citing Primo v. City of Bridgeton, 162 N.J.Super. 394 (Law Div. 1978).  In that case, a child was injured on a slide in a municipal park.  After recounting the LLA legal landscape in 1978, Primo held that the park was not covered by the Act because "appellate cases [draw] a distinction between improved and unimproved land" and "[t]he slide represents . . . an improvement ...." Id. at 403. However, because Primo predates the 1991 amendment to the LLA that clarifies the Act's application to improved property, its analysis is no longer good law and Plaintiff's reliance on Primo is misplaced.

Plaintiff, further, cites Benjamin v. Corcoran, 268 N.J.Super. 517 (App. Div. 1993), in support of her position.  In Benjamin, a child was bitten by a dog while sledding at the New Jersey's Fireman Home ("the Fireman's Home"), an "improved tract of land in a populated suburban area." Id. at 531.  The dog was owned by Jeanette Corcoran, an employee of the Fireman's Home who lived in a house on the property.  In reasoning

that the Fireman's Home was not a covered premises, the <u>Benjamin</u> Court described its

grounds and surroundings:

> The grounds of the [Fireman's Home] are surrounded by residential lots.  On the grounds there were several buildings, including the [Fireman's Home's] administrative building and main building, two houses, and a barn.  The location where [the child] was sleigh riding when he was attacked was near the structures and driveway, and only 100 to 150 feet from the Corcoran's house.  The land was not located in a rural or woodland area.

<u>Id.</u>  In that court's view, it was beyond peradventure that the LLA did not apply to such

"developed land in a populated suburban area."   <u>Id.</u> at 532.  Based on the court's

analysis in <u>Benjamin</u>, this Court agrees with Plaintiff that the larger area in which the

location of the accident is situate may be considered by the Court in determining the

dominant character of land.

The problem for Plaintiff, however, is that <u>Benjamin</u> is factually distinguishable

and its reasoning counsels in favor of a finding that Sandy Hook *is* a covered premises.

Unlike the land in <u>Benjamin</u>, Sandy Hook is not located in a suburban area.  To the

contrary, Sandy Hook is a beachy area consisting of 2,070 acres of land and 2,620 acres

of waters.  The only "residential" areas surrounding Sandy Hook are operated by the

Coast Guard and are not accessible by the public.  The Court acknowledges that

Plaintiff's fall was near the decommissioned Fort Hancock.  But the buildings located in

that area are primarily abandoned, and the trail upon which Plaintiff fell (Fisherman's

Trail) is not even fully paved or maintained.  And, in any event, the 1991 amendment to

the Act makes clear that it applies to improved land.  This result is consistent with

Weber, supra, as well as other decisions applying the LLA.  See e.g., Nazzaro, 304

F.Supp.2d at 607 (applying LLA to obstacle course in wooded area located in Fort Dix);

Alfano v. Middlesex Water Co., Docket No. L-7296-06, 2009 WL 2568004, *3 (N.J. App.

Div., Aug. 21, 2009) (applying LLA to largely undeveloped eight-eight acre property,

not used for residential purposes, but located in the densely populated city of South

Plainfield).

Focusing on Sandy Hook's inclusion in Gateway, Plaintiff further argues that

Gateway is part of the New York City metropolis.  The Court finds this particular

argument wholly without merit; that an undisputably vast, open park is abutted by a

city is not the sort of situate-specific analysis that New Jersey courts have created.  In

Benjamin, that court focused on the several miles—not hundreds of miles—surrounding

the accident site.  Moreover, a recent unpublished Appellate Division decision held that

an expansive public park was a covered premises "[a]lthough [it was] located in a

heavily populated urban area ...."  See Vaxter, 2010 WL 4237242 at *3.  That court

focused primarily on the park itself, as opposed to the city in which the park was

located, repeatedly noting that the park was an "open tract of land."  Id.  While this

decision is not a binding one, I find its reasoning persuasive and instructive here.

Plaintiff further argues that the 1991 amendment to clarify the Act's application

to improved lands refers to only minor improvements.  I find no such limitation in the

text of the Act, nor do the cases Plaintiff cites for this proposition compel a result in her favor.  Plaintiff cites <u>Lauber v. Narbut</u>, 178 N.J.Super. 591 (App. Div. 1981), <u>Labree v. Millville Mfg., Inc.</u>,  195 N.J.Super. 575 (App. Div. 1984), and <u>Whitney v. Jersey Central Power & Light</u>, 240 N.J.Super. 420 (App. Div. 1990).  But each of these cases predates the 1991 amendment and is, therefore, unhelpful to her.  Accordingly, the Court concludes that Sandy Hook is semi-rural land and the United States is entitled to immunity under the LLA.

Plaintiff's additional argument that the purposes of the Act are not furthered by applying the Act to Sandy Hook does not compel a contrary result.  Plaintiff notes that the purpose of the Act is to encourage landowners to "keep their lands in a natural, open and environmentally wholesome state" by providing them a "modicum of protection for tort liability" on account of the difficulty of protecting such land from trespassers and rendering such land safe for invitees.  Pl. Opp. at 9 (quoting <u>Harrison</u>, 80 N.J. at 400).  In Plaintiff's view, Sandy Hook, as part of Fort Hancock, is neither difficult to protect from trespassers nor difficult to render safe for invitees.  Even assuming this to be true, however, the plain text of the LLA does not require a landowner to demonstrate actual difficulty in protecting his land or keeping it safe.  So long as the land is semi-rural, the landowner is entitled to the Act's protection.

Finally, Plaintiff argues that the United States is liable under the common law for failure to warn of an artificial condition likely to cause serious bodily harm.  The Act,

however, alters the common law.  A plaintiff may bring suit against a landowner of covered premises only under one of the enumerated exceptions to the Act.  <u>See</u> N.J.S.A. 2A:42A-4 (setting forth exceptions).  Because Plaintiff has not cited to any relevant exception, her argument fails.

IV.     **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.  This case is closed.


Dated: December 13, 2010                           /s/ Freda L. Wolfson
                                                   Honorable Freda L. Wolfson
                                                   United States District Judge